**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON**

**CRIMINAL ACTION NO. 05-12-DLB**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**VS.**                              **OPINION AND ORDER**

**FREDDY CLINTON WILSON**                                        **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**I.      Introduction**

On December 2, 2005, a hearing was held to determine the mental competency of the Defendant to stand trial.  Assistant United States Attorney Bob McBride was present on behalf of the United States; Attorney Tasha K. Scott was present on behalf of Defendant Freddy Clinton Wilson, who was also present.  The proceedings were recorded by Official Court Reporter Lisa Reed Wiesman.

During the hearing, two expert witnesses testified.  Dr. Glenn Weaver testified on behalf of Defendant and Dr. Judith Campbell testified on behalf of the government.  The parties further agreed that the forensic reports of each witness shall be considered as evidence on the competency issue and each witness testified consistently with the opinions set forth in their respective forensic reports.  Dr. Campbell's report was previously filed under seal (Doc. # 35) and Dr. Weaver's Report is ordered to be filed under seal herein.  The parties also stipulated to the qualifications of Weaver and Campbell and their respective curricula vitae were admitted as exhibits.

1

Having carefully considered all of the evidence in light of the relevant legal standards, the Court finds that Mr. Wilson has not met his burden of demonstrating incompetence to stand trial.[1]

## II.   **Applicable Law**

A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.... [and] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402 (1960).  In determining whether a defendant is competent, the court may consider a number of factors, "including medical opinion and the court's observation of the defendant's comportment," *United States v. Nichols,* 56 F.3d 403, 411 (2nd Cir. 1995), representations by defense counsel, *United States v. Renfroe,* 825 F.2d 763, 767 (3rd Cir. 1987), and the defendant's psychiatric history, *see United States v. Gigante,* 1996 WL 497050 at *4 (E.D.N.Y. Aug. 28, 1996).

"All of these factors must inform the statutory requirement[2] that a defendant be able to understand the nature and consequences of the proceedings against him and be able to assist in his defense." *Renfroe,* 825 F.2d at 767.  In that regard, a diagnosis of mental illness does not necessarily require a finding that the defendant is not competent.   *See*

---

[1]  The Supreme Court has noted that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence."  *Cooper v. Oklahoma,* 517 U.S. 348, 355 (1996).

[2]  The federal competency standard is codified at 18 U.S.C. § 4241(d), which provides, in relevant part: "if, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General...."

*Newfield v. United States,* 565 F.2d 203, 206 (2nd Cir. 1977) ("It does not follow that because a person is mentally ill he is not competent to stand trial." (citation omitted)).

### III.    Forensic Reports and Opinions

### A.    Dr. Weaver

According to Dr. Weaver's forensic report, his evaluation of Mr. Wilson consisted primarily of a review of several of Wilson's prior psychiatric reports, taking a history from Wilson and/or his mother, conducting psychological testing, and performing a psychiatric examination.   Dr. Weaver's examination occurred on June 3, 2005 and lasted approximately 3 hours.[3]

During his evaluation, Dr. Weaver learned that Wilson had had two head trauma events as a child which he believes contributed to his diagnosis of mental retardation.  He also learned that some of Wilson's siblings have been diagnosed as being retarded. According to Dr. Weaver, his psychological testing of Wilson, which consisted of the Luria-Nebraska Neuropsychological Screening Battery test, and a Weschler Adult Intelligence Scale (WAIS-III) test, substantiates Wilson's prior diagnosis of mental retardation.  In rendering his opinions, although Weaver's own WAIS III test revealed a full-scale IQ for Wilson in the low 70s (which would correlate to a finding of borderline intellectual functioning), he relied upon an earlier 1989 WAIS test which revealed a full-scale IQ of 65. That test was conducted during an application for social security disability benefits.

Based on his evaluation, Dr. Weaver diagnosed Mr. Wilson with mild mental retardation and possible sequelae of head injuries.  Dr. Weaver further opined that Mr.

---

[3]  Although the evaluation lasted approximately three hours, Weaver only spent 1-1 ½ hours with Defendant during the evaluation.

3

Wilson will not be able to comprehend the proceedings and may not be able to adequately assist in his own defense with his attorney.

During the hearing, Weaver explained that his evaluation revealed that Defendant was heavily dependent on his mother for answers who told Weaver that he was easily persuaded to do things for others.  Weaver further explained that Defendant gave many concrete or simplistic answers to his questions which contributed to Weaver's conclusions that he would have a difficult time assisting his attorney in his defense.  Weaver also explained that one's familiarity with the testing procedures may explain why someone scores higher on a WAIS III test on subsequent tests.  Despite the fact that both his and Dr. Campbell's 2005 WAIS III tests revealed full scale IQ scores exceeding 70, Weaver continued to rely upon an earlier 1989 WAIS test taken in conjunction with a social security disability application which revealed a full scale IQ test of 65.

**B.    Other Defense Exhibits**

Admitted as Defense Exhibit 2 during the hearing was a compilation of reports on Defendant's psychological and intellectual functioning.  These reports included a 1982 Report of Psychoeducational Evaluation conducted by the Kenton County schools, a 1989 social security evaluation and records associated with that evaluation and disability determination, and  a 1975 discharge summary from Cincinnati Children's Hospital.  The Kenton County evaluation was ordered because of behavioral problems Defendant was exhibiting.

The Kenton County school testing revealed that Defendant was operating in the "low average" to "borderline" range of general intellectual functioning.  His full scale IQ on the WAIS test was estimated to be 76 +/- 4 points, meaning the range was between 72-80.  In

4

the area marked "cognitive", the school psychologist stated:

> Further analysis of Fred's demonstrated skills reveals some areas which are quite well-developed and in fact approach the average for his age. Certain of Fred's perceptual-motor and performance based abilities are among such strengths. Fred demonstrates good skills in analyzing a visual pattern and then synthesizing the pattern in forming a reproduction of it. He also demonstrates near average skills in arranging pictures into a meaningful sequence and putting together puzzles. He typically performs such operations quickly and accurately, and is willing to persist in his efforts when a solution is not immediately forthcoming. While his persistence is admirable, he occasionally exceeds established time limits before achieving a solution....
>
> In the realm of verbal skills, Fred demonstrates a relative strength in his comprehension of social problem situations. His performance indicates that his fund of practical, common sense information is average for his age, and this would be expected to benefit him in everyday living. Fred's knowledge of words and ability to express such knowledge, however, is less well-developed. Fred states outright that he has never heard many terms, and he frequently uses concrete terms to express his knowledge of others. He further has difficulty identifying similarities between words, which also requires abstract verbal reasoning. Fred's demonstrated skills in the verbal realm indicate that he may profit from verbal instruction, in the classroom and elsewhere, which contains terms with concrete referrants, and which is accompanied by visual demonstration and examples.

Defendant's performance on a battery of achievement tests revealed he scored in the 1st to 3rd grade level in reading and written language, 6th to 8th grade level in mathematics, and the 3rd to 5th grade level in knowledge.

During his 1989 evaluation for social security disability benefits, Defendant was diagnosed as mildly mentally retarded as presently tested (based on a WAIS full scale IQ of 65). The examiner also opined that he was mildly impaired in his ability to – relate to others; understand, remember, and carry out simple instructions; and attend and concentrate well enough to perform simple repetitive tasks. He was also found to be moderately impaired in his ability to deal with the stress and pressures associated with day to day work activities. Finally, the SSA evaluator believed that his ability to reason would

be impaired by his concreteness and intellectual limitations.  The other records which were admitted as part of Defendant's Exhibit Two were of no consequence in the Court's competency analysis.

### C.   Dr. Campbell

According to Dr. Campbell's forensic report (Doc. # 35), her evaluation of Defendant consisted of regular observations of him by Bureau of Prisons (BOP) staff for approximately two months (August 5 - October 3, 2005).  During that time period, Defendant received a routine medical screening, including a history and physical examination with laboratory work.  He was also clinically interviewed by Dr. Campbell.

Dr. Campbell also reviewed numerous court documents, correspondence by defense counsel, several investigative reports, prior psychological reports, and a Children's Hospital Discharge Summary.  Her evaluation also consisted of interviewing Mr. Wilson's mother, his pretrial services officer, and the prosecutor and defense attorney.  Additionally, Dr. Campbell administered three separate psychological tests: a WAIS III test, a Minnesota Multiphasic Personality Inventory, Second Edition test, and a MacArthur Competence Assessment Tool - Criminal Adjudication test.

During the approximate two months Defendant was at FMC Lexington, Dr. Campbell observed him interact with other inmates and staff while he was in the regular population approximately three times.[4]  Dr. Campbell visited Defendant in the special housing unit approximately nine times.  Campbell estimated the total amount of time she spent with Defendant was approximately ten hours during his stay at FMC Lexington.

---

[4]  Defendant was in the regular population from August 10-21, 2005.  He was placed in the special housing unit on August 21 for fighting with another inmate.

The WAIS III test was administered at FMC Lexington on September 6, 2005 and revealed an full-scale IQ of 71, correlating to an overall intellectual ability in the borderline range. That score was consistent with the "low 70s" full-scale IQ score which resulted from Weaver's June, 2005 WAIS III test. According to Campbell, Defendant appeared to cooperate with the testing and the results therefore were an accurate reflection of his functioning and intellectual ability.

The MMPI test was administered to Defendant on August 18, 2005. The MMPI test is a true/false test designed to assess psychological symptoms and personality characteristics. Because of Defendant's difficulty reading, the MMPI test was administered in an audio form.[5] The MMPI revealed that Defendant is chronically tense, anxious, and obsessive, especially about his health. The MMPI test also indicated Defendant has a great deal of anxiety and may have difficulty interacting in an appropriate manner when his anxiety levels are elevated.

Defendant's performance on the MacArthur Competence Assessment Tool - Criminal Adjudication Test (MAC-CAT) suggested to Dr. Campbell that Defendant may experience some difficulty in appreciating or rationally understanding the proceedings against him. This was based on Defendant's quick responses to the questions and his concrete answers. However, after administering the MAC-CAT, Dr. Campbell asked Defendant a series of specific case-related questions which in Campbell's opinion, lead her to conclude that he did have a rational understanding of the allegations against him. Those

---

[5] During the competency hearing the undersigned made a concerted effort to observe Defendant's demeanor throughout the hearing. When Dr. Campbell indicated that the MMPI test was administered in an audio form, the Court observed Defendant shake his head up and down, indicating his agreement.

included questions regarding the roles of the prosecutor, defense attorney, judge, and jury. On page 10 of her forensic report, Dr. Campbell summarizes those questions and answers. Campbell also indicated that Defendant was able to accurately describe the events leading up to his arrest and expressed a "clear memory" of the events leading to his interaction with law enforcement officials, and expressed an awareness of the evidence against him as, "There's a video tape of me screaming 'I got the best shit in town.' They have me on video saying I had the best dope in town." Moreover, Defendant was able to describe the events in a rational and reality-based manner.

If the Court is able to provide Defendant with extra time for defense counsel to work with him to prepare for trial and allow for frequent breaks in the Court proceedings, Dr. Campbell opines that Defendant is competent to stand trial.

## IV.   Analysis

Upon reviewing the respective forensic reports and after considering the testimony of the two experts, the Court finds that the opinions of Dr. Campbell are more credible and were based on a wider range of relevant information. Additionally, her evaluation included a wider array of updated psychological testing and included case related questions designed to specifically determine if Mr. Wilson understood the proceedings against him and if he could assist his attorney during trial. Simply put, her evaluation of Defendant was more thorough and her opinions are correspondingly more reliable than Dr. Weaver's.

As an initial matter, Dr. Campbell's reliance on current psychological testing is more dependable than Dr. Weaver's reliance on an 1989 WAIS test. Although Weaver's own WAIS III test revealed a full-scale IQ commensurate with Dr. Campbell's result, Weaver chose to discount his results in lieu of the 1989 test conducted by SSA. Moreover,

8

although Weaver believed the 2005 WAIS III test results may have been the result of Defendant's familiarity with the testing procedures, given that the 1989 test was administered more than 15 years earlier, any familiarity he may have had with the testing would have most likely faded.  Thus, Weaver's theory on his use of the 1989 test over the 2005 test is suspect.

The Court concludes that the two 2005 WAIS III tests, both of which revealed a full-scale IQ of greater than 70, are an accurate assessment of Defendant's overall cognitive functioning.  Additionally, because the Court is being called on to determine Defendant's present competency to stand trial, reliance on outdated testing is suspect.

In rendering its decision that the Defendant is competent to stand trial, the Court relies upon the following additional information –

1. The fact that both experts opined that Defendant understands the respective roles of the prosecutor, defense attorney, judge, and jury;

2. The fact that both experts explained that Defendant has the ability to understand Court proceedings, although they differ on the extent of his understanding;

3. The fact that Dr. Weaver testified that in his opinion, Defendant knows some things are against the law and others are not;

4. The fact that during his evaluation, Dr. Weaver did not ask the Defendant anything about the evidence the government has against him.  By not doing so, the Court concludes that his opinion that Defendant may not be able to adequately assist in his own defense with his counsel is suspect;

5. The fact that based on the Court's own observations during the competency

hearing, Defendant exhibited an understanding of the testimony. *See* footnote 5;

6.  The fact that Defendant told Dr. Campbell during her evaluation that he knew he was buying pseudo (pseudoephedrine) in exchange for getting meth[amphetamine];

7.  Defendant's knowledge of the specifics of his case, namely, being able to provide Dr. Campbell with the events leading to his arrest, and being able to provide his attorney with that information;

8.  Defendant's knowledge of the specific evidence the government would use if the case proceeded to trial, namely, a video tape of him wherein he describes the quality of the meth he has;

9.  Defendant's statement to Campbell that getting arrested was the best thing that happened to him, indicating to the Court that Defendant has an understanding of the problems associated with drug use;

10. Defendant's knowledge of other defendants who have been charged and sentenced as part of the investigation in this case.  According to Dr. Campbell, Defendant was able to explain that some defendants may receive lighter sentences if they can provide information on other persons.

In rendering its decision, the Court gives little credence to the fact that Defendant does not know what "conspiracy" is.  That fact does not require a finding that Defendant is incompetent to stand trial.  In fact, based on the Court's own observations during several criminal trials, petit jurors routinely struggle with the concept of conspiracy and the jury instructions defining conspiracy.  Describing it as having made a "deal" with someone else,

while simplistic, is sufficient understanding of conspiracy for competency purposes.

In this case, the indictment charges Defendant with one count of conspiracy to manufacture and/or distribute methamphetamine, and five individual methamphetamine distribution counts.  Defendant's reference to a video of him commenting on the meth, as well as his ability to recollect the events which lead to his arrest, indicates that he has a sufficient grasp of the evidence against him sufficient to assist his attorney in his defense. Moreover, the Court believes that Defendant is able to consult with his lawyer with a reasonable degree of rational understanding; can otherwise assist in his defense, has a rational understanding of the criminal proceedings in this case, and has a factual understanding of the proceedings against him.

### V.    Conclusion

Based on the record herein, the Court finds, by a preponderance of the evidence, pursuant to 18 U.S.C. § 4241, that Defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  Accordingly,

**IT IS ORDERED** that the defendant is found to be mentally competent to stand trial. In that regard, and consistent with the recommendations of Dr. Campbell, the Court will give the Defendant additional time to prepare for trial and will further provide frequent breaks during the trial;

**IT IS FURTHER ORDERED** that the forensic report of Dr. Weaver, as well as Defendant's Exhibit 2 admitted during the competency hearing, be **filed under seal**;

**IT IS FURTHER ORDERED** that this matter is hereby set for a **Status Conference** on **December 19, 2005** at **9:30 a.m.** at which time the Court will schedule this matter for trial.

This 7th day of December, 2005.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\ORDERS\CovCrim\2005\05-12 Order Finding Defendant Competent.wpd